May it please the Court, I'm Charles Watts representing the appellants Jerry and Michelle Hahn. Mr. Hahn is in the courtroom with me today. I will attempt to reserve five minutes for a rebuttal. This case involves a detailed signed letter of March of 1989 where defendant respondent Strasser acknowledges his responsibility to pay to Jerry and Michelle Hahn money when he receives it, a share of money that he receives at a contingent uncertain future date. That letter, as I say, was signed by both parties. The district court in this case found fault with the letter as a written contract under the six-year Washington statute of limitations. This is a Washington law case. The district court found fault because it did not state, and this is the quote from the court's decision, it did not state the performance required of Hahn. At the time the letter was signed by Strasser, Hahn had already performed. There was no performance required of Hahn. We cite to the court the case of Closs v. Honeywell, Associated v. Lewis, and we cite even one case that the court itself, the district court cited, and that's the Scone case, as support for the proposition that under Washington law, which has a unique statute of limitations provision that deals with express or implied contracts, that under Washington law, which may be unique to the entire country, this type of absence, if you will, of what the consideration already provided by Hahn was, is not fatal to the determination that we have a six-year statute of limitations. Mr. Wallace, you look like you've been around for a while. I'm going to the senior lawyer's luncheon when I leave here today. Yes, I have, Your Honor. I'm not sure if that's good or bad. We like seniors. One of the standard phrases that you always see in written contracts is, for good and valuable consideration received. It's standard. That's boilerplate. Under your theory, that's superfluous. Well, it's not my theory. It's the Washington statute of limitations that is unique in allowing the court to imply terms that are not expressly stated. But in class, there was an offer of employment as a nurse. And what was implied was people don't work for nothing since slavery was abolished. So you imply that there be a reasonable payment for the services. But here, there's no implication of anything that Mr. Hahn was to do, certainly. And there's no implication of what he had done. The commission, which is mentioned in the letter, is to be paid to Mr. Strasser. And the commission might imply that Mr. Strasser was to do something, but it certainly didn't imply that Mr. Hahn was to do anything. So I don't see where there's an implication of any service that Mr. Hahn was to do, analogous from the case of class. Help me on that. All right. Thank you, Your Honor, for the question. First of all, it is common in promissory notes to have four value received, and then you recite the obligation to the other party to pay the money back. That value received, of course, does not state necessarily what the consideration is. It simply says, I've gotten something. Under Washington law, it is our position, and we believe the case law supports it, and we believe the district court was in error in not accepting that position. It is our position that the court is entitled to imply already performed consideration, as it were. Now, in answer to your question, the letter itself, the relationship of the parties, is very similar to Claas in that we have a unilateral contract. Honeywell says to Mr. Claas, you go to nurse school, and we'll make you a head nurse at our Mukilteo operation, which we're setting up. He went to nurse school. By the way, that was all oral. Now, we have a written document here that says everything except, quote, four value received. Claas goes to nursing school. He gets out of nursing school, and Honeywell says, well, we don't have a job for you, so he goes back to work as a maintenance employee. That is an entirely oral contract where the only document is a memorandum internal to Honeywell that was a copy was sent to Claas, entirely, if you will, distant from the facts in this case where we have the letter. Now, if you would turn to the March 20, 1989 letter, it does everything but say for value received. The only way that a person reading this letter, I respectfully suggest to this court, the only way a person reading this letter could conclude that the promise of Strasser is not for value received is to say that Strasser intended to make Hahn a gift. What else would there be that caused Strasser to sign this letter on March 21, 1989? It could be an assignment. Well, of course, in a way, we think it is. It's an assignment by Strasser of half the monies to get from closing on the deal. But you don't argue that it's an assignment. You don't argue that it's an assignment. We don't claim it's an assignment. We claim it's an obligation from Strasser, not something we could present to the, well, we may have been able to present it to the seller, but we didn't do that, or the buyer, excuse me. But it talks about commission in line three. It talks about confirm in line two. I'm referring to the letter now. It refers to income tax consequences. It talks about commission. It talks about a total share of the commission. It talks about the interest that we have. It talks about profits. It talks about commission again. And then in the last sentence, it talks about participating with you in this venture. The idea that this would be anything other than a quid pro quo for Hahn's performance is simply too much of a stretch. And we believe under Washington law the court has the power and has the duty to infer or imply that there was consideration here under the Closs principle. I do not submit to this court that Closs is nearly as strong as our facts or our law in terms of the Closs facts versus our facts. As I've already described, Closs had a writing. I mean, Closs had no writing. We have a writing. So your argument is even though you have to infer some consideration or performance by Hahn, it's still six years, not three. That's our argument, and that's where we think the court went wrong. And the court went wrong, we believe, in requiring a demonstration of Hahn's already completed performance. This is a unilateral contract. In the Bogle and Gates, the two Bogle and Gates cases, Zoppel and Mountain Resources, the court was looking at a bilateral contract. In the first case, Mountain Resources, the court concluded that there was no reciprocal promises. Therefore, there was no contract at all. That was a bilateral contract situation. In the second case, the Bogle and Gates versus Zoppel, the court concluded that Zoppel wasn't a party to any contract. Neither case involved a unilateral contract already performed by one side. Closs does. Associated Brokers versus Lewis does. Your argument is this a little bit like two people agree that one of them is going to buy a lottery ticket. And the person goes out, and they may even have a little bit of writing, but the second person goes out and buys the lottery ticket and wins the lottery. You don't have to infer anything performance on the first party, even payment for part of the lottery ticket purchase, right? Well, in all respect, Your Honor, that's not right, because our Washington courts have made clear that the language in the statute of limitations, statutes that talks about express or implied, does not eliminate the requirement of a writing. I think your example assumes that they're at the 7-Eleven and one buys and the other gives him a 50 cents or something. In our case, we have the writing. We have the required writing to bring us within the six-year statute of limitations. What the Washington courts uniquely do in this country, we believe, and the Washington Supreme Court said so, is that we don't have to have every T crossed and every I dotted in that writing if a reasonable inference or the word in the statute is implication, can be made from what is in the writing and the surrounding circumstances to fill in that gap. Now, in our case, the gap, of course, is performance that's already happened. So there's no promise by Hahn to figure out. Let me ask you a question. You mentioned income tax consequences, and that intrigued me. Can we imply from the fact that the parties to this contract agreed that there would be income tax consequences to Hahn, that Hahn had rendered a service for which he received taxable income? We would hope that could be implied. We certainly think so. From the language of the letter itself. Yes, we agree. And we think there's ample language, including that language. And obviously what Mr. Strasser was trying to do was to defeat the idea that there was a gift involved where he would be taxable on even the half that he gave Jerry Hahn. So he wants in this letter the fact that Hahn's going to have to pay half of the or have to pay tax on the money Hahn gets. So it won't be taxed to Strasser, and then not a deductible gift. I had a thought, and now I've lost it, but I also can't remember. I think I'm on my own right now. You don't mean a deductible gift. These people are not in charity. No, that's right. You mean non-taxable. Well, it wouldn't be taxable. Non-taxable to Hahn. It would be not taxable to Hahn. The entire income would be taxable to Strasser, and then Strasser wouldn't have a deduction or any way to offset the tax he paid on the money that he gave to Hahn. I will reserve, unless the Court has more questions at this time. Thank you. Thank you. I didn't cover two other issues that I don't want to be considered to have been waived here. That's the issue of the discovery rule and the equitable tolling. Thank you. Thank you. May it please the Court. My name is David Ebel. I represent the appellee, Steven Strasser. To answer your question, Your Honor, about whether we can infer from the income language in the letter whether there was some sort of services, there may be an implication possibly that some sort of services were either going to be rendered in the past or in the future, but the problem is we don't know. We don't know what those services were. That's the crux of this case. We don't know whether it was. Does it matter? Well, it does. No, it doesn't matter because instead of implying a service, the contract had said for services that Hahn has rendered, which we will not describe and keep confidential until our death, right? That would be. That would be fine. So we don't care what the services were. But, Your Honor, what we don't know from this letter is whether, if you read this paragraph carefully, we do not know whether it's for services to be performed in the future, whether it's been services. It wouldn't matter. There would be a consideration either past or future or the promise of a consideration. There's no knowing whether or not the consideration of performance has occurred. If it said for performance to be performed in the future. The law requires specificity. My distinguished opposing counsel referenced that if it's past consideration that's been performed, and, again, we need parole evidence to determine whether or not there's been any past performance accomplished. But if it's past consideration performed, then the law allows less particulars. It can say for services rendered. However, if you're talking about a proposed act in the future, there has to be specificity terms and conditions of what that is. What's your best case for that proposal? The case, I don't have an answer for that, Your Honor. I believe it's in our briefing. We responded to their argument on past executive performance. Let's take your point. You mean to say that a written contract saying for services to be rendered in the future would be an insufficient relation of consideration unless it were to say for services rendered in the future as a finder for the sale of the Aurora Center property. Unless that little rumor then as a matter of contract law in Washington, the recitation as a consideration would be inadequate. And so I ask you, what case says that? I don't have the answer for it, Your Honor. But the terms and conditions in that instance would be lacking. For instance, if I have a contract, if I write something to you that says I'm going to give you, I'm going to share half my salary with you this year, and for income tax purposes, we'll each report half, right? And we both sign it. That's not a contract. We would be turning contract law upside down if we say that that is an enforceable written contract because there's no indication of what your performance has been in the past, whether it's in the future, whether you did something and you're saying that you're going to pay income tax on it, whether you serviced me by giving me free legal advice or whether you painted my house or sold my boat or whatever. We don't know. We cannot infer from this writing what the performance, whether it was past or future or whether part of it was past or part of it was the future, we cannot from this document determine what that is. With the Court's indulgence, and I may add, Your Honor, in this case the declaration testimony, again, parole evidence of the parties, is very different as to what the offer was, what the performance was, whether or not performance even occurred. And that magnifies the problem in this case because we cannot determine from the face of the letter what the contract was, what the essential elements of the contract were. What was Hahn supposed to do? What was he supposed to do? Did he do it in the past? Did he do it? Was he supposed to do it in the future? Is it no obligation at all? Like the case in, like Lavold, we don't know. This doesn't commit Mr. Hahn to anything. There's no commitment whatsoever. It's lacking essential elements. Once the trial court, and of course we're here, Your Honor, asking, Your Honors, we're asking that the court affirm the district court's order granting summary judgment in Mr. Strasser's favor and denying summary judgment, the motion for summary judgment by Mr. Hahn. Once it's established that the three-year statute of limitations applies, it becomes just a math problem. The alleged breach is April 16, 2004. It is undisputed. It is undisputed as well that the lawsuit was filed almost six years later on March 29, 2010. This court is bound. Question to you. Yes. In the last sentence of this document, it reads, Steve, I want to thank you again for giving me the opportunity to participate with you in this venture. Does that indicate an admission by Mr. Strasser that this was a joint venture and therefore that he had a fiduciary relationship with his joint venturer which required him to be loyal to his joint venture and to give him notice of the sale? I don't think it constitutes an admission, Your Honor. It also doesn't establish what that participation is, whether it's something, again, respectfully, whether it's something, the opportunity to participate in the future, performance that's going to occur in the future. If it were a joint venture, then the discovery rule would apply, would it not? If it were. There would be equitable tolling of the statute because the fiduciary joint venturer, Mr. Hahn, had not told his co-fiduciary, pardon me, Mr. Strasser, had not told Mr. Hahn about the sale. Well, Your Honor, I'm not aware of any evidence that this is a joint venture. What about the word venture? It's an opportunity to. Does that imply something? But what venture, but we don't know what venture, what venture it is. Participating in a venture. Well, in reading this entire letter, which I might add is written by a lawyer and if it was intended to be a contract, correct, and if it was intended to be a contract, we know that it would include a contract. This is pretty clearly consistent with the declaration of Mr. Strasser which says, I asked my lawyer to write a letter so that I don't get taxed on the full $50,000 when you put something together. If Mr. Hahn intended this to be a contract, it would be. But back to your question, Your Honor. If you read this entire letter, if there's any venture, it's not a venture, the word venture here is clearly not referencing any venture between Mr. Hahn and Mr. Strasser, but instead the purchase, whether or not it happens in the past or the future, this purchase of the property. So you say that Mr. Strasser's declaration shows that he didn't want to get taxed for the whole $50,000. Correct. Doesn't that imply that Mr. Hahn did some work for which he would be taxed? Again, that's parole evidence. It's the declaration of Mr. Hahn upon which we're, the reason we're even talking about it is because that's something outside of the writing. It would corroborate the implication which we discussed earlier that acknowledging income tax liability implies that Mr. Hahn did some work. Well, Mr. Strasser's declaration says, that lays out what he believes the terms of the offer was, which is completely different than what Mr. Hahn says, and also the performance. And in that declaration, Mr. Strasser testifies that Jerry asked him to split the commission and he gave him the $50,000 and he gave it to him. As a gift? Well, there's been a lot of discussion about that, Your Honor. I don't know whether Mr., there's no record evidence, and I personally don't know whether there was any taxation as a gift or not. Did Mr. Strasser file a gift tax return? Well, that's what we don't know, Your Honor. That was raised in the appellate record, that issue, that question, for the first time. So it's not a record, and I personally do not know the answer to that. A lot of unanswered questions in this case. Why shouldn't we send it back to have the record fleshed out? Well, because, Your Honor, the one, the reason that there are, the fact that there are unanswered questions, the very fact that there are unanswered questions about what the offer was, what was the performance, if any, what were the conditions that were placed on the performance, the very fact that there's these disputes illustrates the reason that this case, that the trial court should be affirmed, because the existence of those fact questions, which cannot be resolved on the four corners of the document, tell us, under longstanding Washington law, almost 100 years, that if parole evidence is necessary to establish any element of a contract in a writing, then the writing is not a written contract for purposes of statute of limitations. It is partly oral and partly written. And so because there are these unanswered questions, that is the very reason that we, the case is time-barred. This may be, this letter may be evidence, Your Honors, that a contract existed. It may be evidence, but it is not a written contract on its face. And if we call this a written contract on its face, we would be ignoring the law of contracts in Washington and also the statute of limitations law in Washington, which finds that this would be at most a partly oral, partly written question, written, partly written, partly oral contract. Your Honor, just briefly, there is the issue of RPC 1.8. If for any reason that the court doesn't find that this case, that the cause of action was time-barred, we've got the issue of RPC 1.8. Of course, when a lawyer and a client enter into a business transaction, there are certain safeguards that must be fulfilled. And if the safeguards aren't fulfilled, then it's a violation of that rule, and the law in Washington is that a violation of the RPC is an unenforceable contract. So, of course, the first question is, is this an attorney-client relationship? The Washington Supreme Court in Haley says that the determination of whether or not it's an attorney-client relationship is based largely on the subjective belief of the client, but that the subjective belief must be reasonably based upon the conduct and actions of the lawyer. In this case, the evidence from Mr. Strasser's declaration is his subjective belief was that Mr. Hahn was his lawyer. Now, the conduct and the actions of the lawyer. Mr. Hahn was Mr. Strasser's lawyer? Correct. For the purpose of what? Well, Your Honor, that goes to the second question. Mr. Hahn, for general business purposes and possibly for this. How do you handle the language here that to the extent that attorney services were performed, $300 of attorney's fees to the law firm was a deduction? That was paid directly as a deduction. So how do you square that with the idea that in addition to that, Mr. Hahn was Mr. Strasser's lawyer? Well, I'm sorry. Are you asking, Your Honor, whether that paragraph of the letter implies that Mr. Hahn was Mr. Strasser's lawyer or whether it shows that it was not? The opposite. Just the opposite. Well, the record shows that the payment of that money was to the seller, or for the benefit of the seller apparently paid by Mr. Strasser per the terms of this letter. But Mr. Hahn admits in his declaration, his first declaration, mind you, before the RPC issue came up, he says at ER 28 that Mr. Strasser was a client of mine. He became a client of mine between 1985 and 1987. Again, this is 1989. And I represented him principally on business matters. Again, Mr. Strasser believed he was his lawyer. Mr. Hahn later admits in his declaration that he had nine open files for, at that time, between 1987 and 1989, again during the time, nine open files for Mr. Strasser's company and for Mr. Strasser and his partner, Jerry Shoup. So we've got the subjective belief that it's an attorney. Oh, one last thing, Your Honor. This letter that appellants claim is a contract and we claim is not a written contract on its own, it was on Mr. Hahn's letterhead to someone he had represented in the past, which he admits. So there's actions and conduct that clearly demonstrate that this was an attorney-client relationship and subjective belief. And RPC 1.8 requires that the terms of this agreement be fully disclosed in writing. Mr. Hahn admits in all of the pleadings that this was some oral agreement that occurred well before what this letter occurred. So there's no writing. And even if this letter is considered a writing, it doesn't fully disclose the terms of the transaction as required by 1.8. Quick question. Yes. Yes or no answer. Did Judge Martinez reach this issue? Judge Martinez did not reach that issue, did not find it necessary. The answer is no. No. Thank you. My time is up, Your Honors, unless you have any questions. Thank you. Mr. Watson, you have some time reserved? I don't. I guess I do remember how much. She'll tell you. I just got told. Well, you know, my age came up. And I have to say to you that I get real tired after 71 years on this earth of doing what I'm doing until I'm challenged intellectually. And this is a great honor to be in front of your honors today for that purpose. The for value received example, which is so common, is a perfect example of a lack of description of what gave rise to the promissory note. In other words, just to say for value received only says it's for value. It doesn't say what it is. We believe that the Washington Statute on Statutes of Limitations and the case law that we have relied on in our brief and cited you and discussed here in the argument makes clear that you do not need to go into detail about already performed consideration. I would like to refer you. This is quoted in the brief, but I think it's so important. I feel that the restatement of contracts, since contract law has been around since the Code of Hammurabi, I assume, I feel that the restatement of contracts, which is a compilation that's been around for decades, has some very strong influence on our courts in this country. So for that reason, I want to call your attention to Section 131 of the Restatement of Contracts, Second. And in Comment G, it talks about the essential terms of unperformed contracts must be stated, but details or particulars need not. What is essential depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises in the remedy sought. Omission or erroneous statement of an agreed term makes no difference if the same term is supplied by implication or rule of law. Comment H, and I only quote part of this, is, aside from explicit statutory provisions, the prevailing view is that error or omission in the recital of past events does not affect the sufficiency of a memorandum. That's Comment H to Section 131. It goes on, where, on the other hand, the consideration for a promise consists of a return promise not yet performed. Performance of the return promise is commonly a condition of the promissor's duty. So I think the restatement makes very clear that there's a distinction between the obligation in a written contract to recite already performed promise or consideration and the need to recite executory or non-performed. The indicia here of the contract are payment. I suggest that most mortals would not be giving $25,000 to somebody else unless there was a good and sufficient reason for it. The letter itself that we've been talking about, the March 89 letter, refers to the fact that payment has been made. Mr. Strasser admits in his declaration that he told Mr. Hahn he would pay him half if he found a buyer, and that's at Paragraph 5 of the Strasser Declaration in the record here. Quote, I did tell Jerry that I would split the commission from the seller if he brought me a buyer. That's a judicial admission under oath in this case in the record. Mr. Strasser, a lawyer, signed the agreement. Now, he's attempted to say, well, I don't remember if I read it or not, but I think a lawyer can't get very far with any court on that theory. The letter itself, we suggest, impliedly, if not directly, acknowledges performance. The breach date we don't agree with, of course, under our theories of equitable tolling or the discovery rule. It is true the property sold in April of 2004, but it is not true that we agree that that, under all theories of our case, that that is the date from which the six years should measure. I might just comment that under the discovery rule, we believe the court is wrong in citing Vertex for the proposition that there is no discovery rule in contract cases in the state of Washington. A careful reading of Vertex, particularly footnote 5, shows that that is an open question, and the court acknowledges in footnote 5 that the majority of the states in the nation allow a discovery rule in contract breach situations for purposes of statute limitation signaling that in the right case, we suggest signaling in the right case, they will do so in Washington. Counsel, you may wish to sum up here over your time. Oh, I'm sorry. Well, I'll just sum up to say that we believe Kloss and other similar cases associated in Lewis and the Scone case cited by the district court here support the proposition that Washington is unique in its statute of limitations. Thank you. We thank both counsel, and again, for another very interesting case, and Hahn v. Strasser will be submitted.
judges: Hawkins, Bybee, Bea